UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| SAMUEL ROY ABRAM, Plaintiff | CIVIL ACTION NO. 1:18-CV-415-P |
| VERSUS | JUDGE DEE D. DRELL |
| USA, ET AL. Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court is a complaint filed by pro se Plaintiff Samuel Roy Abram ("Abram") (#11398-002) pursuant to Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics.[1] Abram is an inmate in the custody of the Bureau of Prisons, incarcerated at the United States Penitentiary in Pollock, Louisiana. Abram complains his constitutional rights were violated during a "lockdown and modified operations that occurred between January 12, 2017 – April 10, 2017, due to inmate on staff assault." Abram names as defendants the United States of America, Andrew Howard ("Receiving and Discharging Worker"), and A. Boteler ("Receiving and Discharging Supervisor").

---

[1] In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officials that is comparable to the statutory cause of action permitted against state officials by 42 U.S.C. § 1983.

Abram initially filed his complaint as a "Bill in Equity." (Doc. 1). The Clerk of Court sent Abram a 42 U.S.C. § 1983 form. (Doc. 5). Because Abram is a federal prisoner suing federal officials, his claims actually arise under Bivens.

Because the United States is immune from suit, Abram's claims against it should be dismissed for lack of jurisdiction. The remainder of Abram's claims should be dismissed as frivolous and failing to state a claim for which relief can be granted.

I.     Background

Abram complains that, during a lockdown on February 27, 2017, Officer D. Williams served the noon meal, which was inedible. (Doc. 9, p. 4). Abram returned the tray of food, and Captain Nunez ordered some new trays and/or extra food to be distributed at dinner time. Abram never received a replacement lunch tray or extra food. Thus, Abram did not have lunch. (Doc. 9, p. 4).

Abram alleges that the "shakedown team" took all of Abram's pants, shirts, underclothes, washcloths, towels, laundry bag, and socks. (Doc. 9, p. 4). Abram claims the staff members violated an employee conduct program statement by not being attentive to their duties. (Doc. 9, p. 4).

Abram complains that a staff member violated his Eighth Amendment rights by "banging on bunks, pipes, walls, and windows well after 10:00 p.m.," causing Abram to suffer sleep deprivation and anxiety. (Doc. 9, p. 4).

Abram alleges that staff members only distributed cleaning supplies for cell sanitation on one occasion during the approximately two-month lockdown period. (Doc. 9, p. 5). Additionally, after an inmate took all of the hygiene items that were to be distributed among Abram's unit, Abram did not receive hygiene items. (Doc. 9, p. 7). Abram claims the staff members violated the employee conduct program statement by not being attentive to their duties. (Doc. 9, pp. 5, 7).

On one occasion during the lockdown period, Abram was supposed to receive a shower, but did not. Abram complains that kitchen workers and main corridor workers were allowed to shower that day. (Doc. 9, p. 5).

Abram claims that on Thursday, April 6, 2017, he took certified mail to the mailroom, where it was held until Monday, April 10, 2017. (Doc. 9, p. 5). Abram also claims that an employee once refused to accept an article of mail from Abram, thereby violating a BOP program statement. (Doc. 9, p. 7).

Abram alleges that, on April 28, 2017, he was instructed to report to the receiving and delivery department. (Doc. 9, p. 6). Defendant A. Boteler instructed Abram numerous times to enter the office, but Abram refused because he did not feel safe. (Doc. 9, p. 6). Eventually Abram entered the office, but was escorted to a lieutenant's office because he had disobeyed a direct order. (Doc. 9, p. 6). After a couple of hours, Abram was released. Abram claims Defendant Boteler violated his rights under the First and Fifth Amendments by threatening him and coercing him to speak with her, and retaliated against him by attempting to send him to the Special Housing Unit. (Doc. 9, p. 7).

## II. Law and Analysis

### A. Abram's complaint is subject to screening under § 1915A.

Title 28 U.S.C. § 1915A provides for the preliminary screening of lawsuits filed by prisoners seeking redress from an officer or employee of a governmental entity. See Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam); Rosborough v. Mgmt. and Training Corp., 350 F.3d 459, 461 (5th Cir. 2003) (holding that private

3

prison-management corporations and their employees are state actors under § 1983). Section 1915A(b) provides for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

      B.    <u>The Court lacks jurisdiction over Abram's claims against the United States.</u>

Abram names the United States as a Defendant. The United States has sovereign immunity except where it consents to be sued. <u>See</u> <u>United States v. Mitchell</u>, 463 U.S. 206, 212 (1983). Consent is a prerequisite for jurisdiction. <u>See id.</u>; <u>Affiliated Professional Home Health Care Agency v. Shalala</u>, 164 F.3d 282, 286 (5th Cir. 1999) (citing <u>Unimex, Inc. v. United States Dept. of Housing and Urban Develop.</u>, 594 F.2d 1060, 1061 (5th Cir. 1979)). The United States has not waived sovereign immunity in a <u>Bivens</u> suit for monetary damages or injunctive relief. <u>See</u> <u>United States v. Rural Elec. Convenience Coop. Co.</u>, 922 F.2d 429, 434 (7th Cir. 1991) (specifying that the jurisdictional bar of sovereign operates when a suit threatens to impose upon the United States liability for money or property damages or some form of coercive injunctive relief); <u>Garcia v. United States</u>, 666 F.2d 960, 966 (5th Cir. 1982) (holding that <u>Bivens</u> does not waive the government's immunity). Thus, the United States is immune from Abram's suit.

### C. Abram cannot state a constitutional claim for the conditions of his confinement.

Abram complains that his lunch was inedible on one occasion during a period of institutional lockdown. Abram sent his lunch tray back, and was supposed to get a replacement tray or extra food at dinner. Abram did not receive the replacement tray or extra food. (Doc. 9, p. 4). Abram also claims that he did not receive cleaning supplies and hygiene items during the lockdown period, and he was not allowed to shower on one day when other inmates were allowed to shower. (Doc. 9, p. 5).

Abram complains that the officers' actions violated BOP program statements. However, a prison official's failure to follow the prison's own regulations or policies does not amount to a constitutional violation. See Geiger v. Jowers, 404 F.3d 371, 373–74 (5th Cir. 2005); Jackson v. Cain, 864 F.2d 1235, 1251–52 (5th Cir. 1989); Arceneaux v. Young, 369 F. App'x 620, 2010 WL 935365, at *1 (5th Cir. 2010); Dehghani v. Vogelgesang, 226 F. App'x 404, 2007 WL 1135303, at *1 (5th Cir. 2007).

To the extent Abram claims that the deprivations amount to constitutional violations, the claim fails. Two requirements must be met before § 1983 liability will arise for constitutional violations relating to conditions of confinement. First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 847 (1994). To rise to the level of a constitutional violation, the conditions must be "so serious as to deprive [Plaintiff] of the minimal measure of life's necessities." Alexander v. Tippah County, Miss., 351 F.3d 626, 630 (5th Cir. 2003) (citing Woods v. Edwards, 51 F.3d 577, 581 (5th Cir.

5

1995)). Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety. See Farmer, 511 U.S. at 847. A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Extreme deprivations are required to state a conditions of confinement claim. See Hudson v. McMillan, 503 U.S. 1, 9 (1992).

Abram cannot meet the objective or subjective component from the complained of conditions of his confinement during the period of institutional lockdown. See Talib v. Gilley, 138 F.3d 211, 214 n.3 (5th Cir. 1998) ("Missing a mere one out of every nine meals is hardly more than that missed by many working citizens over the same period."); Wilson v. Lynaugh, 878 F.2d 846, 849 (5th Cir. 1989) (sleeping on the floor in overcrowded holding tank for ten days fails to state a constitutional violation). A missed shower, occasional banging noises, and temporary deprivation of cleaning supplies is not so serious as to deprive Abram the "minimal measure of life's necessities." Harper v. Showers, 174 F.3d 716, 720 (5th Cir. 1999).

### D. Abram cannot state a constitutional claim for his lost property.

Abram complains about lost personal property during the shakedown. However, Parratt v. Taylor, 451 U.S. 527 (1981) (overruled in part on other grounds) and Hudson v. Palmer, 468 U.S. 517 (1984), known collectively as the "Parratt/Hudson Doctrine," provide that a random and unauthorized deprivation of a property or liberty interest does not violate procedural due process if the state

furnishes an adequate post-deprivation remedy.  See Caine v. Hardy, 943 F.2d 1406, 1412 (5th Cir. 1991).  Although Hudson and Parratt apply on their face to state prison officials, the Fifth Circuit has extended this holding to federal prisoners.  Sun v. U.S., 49 F.3d 728 (5th Cir. 1995).

Abram cannot show the absence of an adequate post-deprivation remedy.  Along with the administrative process of the Federal Bureau of Prisons, 31 U.S.C. § 3724 allows the Attorney General of the United States to settle claims for "personal injury, death, or damage to, or loss of, privately owned property, caused by an investigative or law enforcement officer as defined in section 2680(h) of Title 28 who is employed by the Department of Justice acting within the scope of employment that may not be settled under chapter 171 of Title 28 [i.e. the Federal Tort Claims Act]."  31 U.S.C. § 3724.  Section 3724 represents an adequate post-deprivation remedy for federal prisoners complaining of the deprivation of personal property.  See Marulanda v. U.S. Marshals Service, 467 F. Appx 590 (9th Cir. 2012) (Congress has provided an adequate post-deprivation remedy in § 3724(a) for the unauthorized acts of a federal employee, so plaintiff has no claim for the destruction of his property); Salter v. Nickerson, No. 5:12-CV-22, 2013 WL 866198, at *1 (E.D. Tex. Jan. 25, 2013), report and recommendation adopted, 2013 WL 866475 (E.D. Tex. Mar. 7, 2013); Bonneau v. Maxwell, 2012 WL 3644140 (D. Or., August 23, 2012) (§ 3724 foreclosed Bivens claim for destruction of property by government officials).  Therefore, Abram's claim is foreclosed by Parratt and Hudson.

### E. Abram fails to state a claim regarding his mail.

Abram complains of a four-day delay in sending out an article of mail on one occasion, and an employee's refusal to accept an article of mail on another occasion. (Doc. 9, pp. 5, 7). Abram merely alleges the violation of a BOP program statement, not the violation of a constitutional right. As noted above, a prison official's failure to follow the prison's own regulations or policies does not amount to a constitutional violation. See Geiger v. Jowers, 404 F.3d 371, 373–74 (5th Cir. 2005); Jackson v. Cain, 864 F.2d 1235, 1251–52 (5th Cir. 1989); Arceneaux v. Young, 369 F. App'x 620, 2010 WL 935365, at *1 (5th Cir. 2010); Dehghani v. Vogelgesang, 226 F. App'x 404, 2007 WL 1135303, at *1 (5th Cir. 2007).

To the extent that Abram intended on presenting a constitutional claim, the claim fails. First, Abram does not allege that he was prejudiced in any way from the problems with the mailroom. See Richardson v. McDonnell, 841 F.2d 120 (5th Cir. 1988) (delay in processing prisoner's mail will not offend the Constitution if it is shown that the delay did not prejudice the prisoner legally). Moreover, "in the free world, short delays in mail delivery are common occurrences. Thus, the alleged delay in sending outgoing mail does not state a First Amendment violation because Plaintiff was not deprived of sending mail or delivery of the same for any extended period of time." Duncan v. Kaelin, 2:13-CV-273, 2014 WL 258649, at *3 (S.D. Tex. Jan. 23, 2014).

### F. Abram cannot state a claim for which relief can be granted as to Defendant Boteler.

Abram complains that Defendant Boteler violated his rights under the First and Fifth Amendments by threatening Abram and coercing Abram to speak with her. Abram also claims that Defendant Boteler retaliated against him by attempting to send him to the Special Housing Unit ("SHU"). (Doc. 9, p. 7). Verbal threats do not rise to the level of a constitutional violation. See Westbrook v. Treon, 78 F. App'x 970, 972 (5th Cir. 2003) (citing Calhoun v. Hargrove, 312 F.3d 730, 734 (5th Cir. 2002)).

Abram's allegations establish that he refused an order from Defendant Boteler to enter the office to discuss an administrative grievance, so she told Abram he would be transported to the SHU. In fact, Abram was not transported to the SHU; he was released because of an emergency situation that arose on the compound. (Doc. 9 pp. 6-7). Thus, Abram suffered no retaliation. Even if he had, Abram's allegation that Defendant Boteler retaliated against him is conclusory and does not set forth a chronology establishing a retaliatory motive. Id. (citing Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995); Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999) (to state a claim for retaliation, a prisoner must establish: (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right; (3) a retaliatory adverse act; and (4) causation).

### III. Conclusion

For the foregoing reasons, IT IS RECOMMENDED that Abram's <u>Bivens</u> claim be dismissed for lack of jurisdiction as to the United States and DENIED and DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915A in all other respects.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have 14 calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within 14 days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within 14 days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __18th__ day of June, 2018.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge